ALANNA B. CARBIS (CA Bar No. 264066)
alanna.carbis@cfpb.gov
LEANNE HARTMANN (CA Bar No. 264787)
leanne.hartmann@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Telephone: (415) 645-6615
Fax: (415) 844-9788

Attorneys for Plaintiff
Bureau of Consumer Financial Protection

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>FUTURE INCOME PAYMENTS, LLC; FIP, LLC; CASH FLOW INVESTMENT PARTNERS LLC; PENSION ADVANCE LLC; BUYSELLANNUITY INC.; CASH FLOW INVESTMENT PARTNERS EAST LLC; CASH FLOW INVESTMENT PARTNERS MIDEAST LLC; LUMPSUM PENSION ADVANCE ATLANTIC LLC; LUMPSUM PENSION ADVANCE SOUTHEAST LLC; LUMPSUM SETTLEMENT WEST LLC; PAS CALIFORNIA LLC; PAS GREAT LAKES LLC; PAS NORTHEAST LLC; PAS SOUTHWEST LLC; PENSION ADVANCE CAROLINAS LLC; PENSION ADVANCE MIDWEST LLC; PENSION LOANS SOUTH LLC; SCOTT KOHN; and DOES 1-100,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT OF 2010 AND THE TRUTH IN LENDING ACT** |

The Bureau of Consumer Financial Protection (Bureau) brings this action against Future Income Payments, LLC (formerly known as Pensions, Annuities, and Settlements, LLC); FIP, LLC; Cash Flow Investment Partners LLC; Pension Advance LLC; BuySellAnnuity Inc.; Cash Flow Investment Partners East LLC; Cash Flow Investment Partners MidEast LLC; Lumpsum Pension Advance Atlantic LLC; Lumpsum Pension Advance Southeast LLC; Lumpsum Settlement West LLC; PAS California LLC; PAS Great Lakes LLC; PAS Northeast LLC; PAS Southwest LLC; Pension Advance Carolinas LLC; Pension Advance Midwest LLC; Pension Loans South LLC; Scott Kohn; and Does 1-100, under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, and 5565, and the Truth in Lending Act (TILA), 15 U.S.C. § 1638(a)-(b), and alleges as follows.

## Introduction

1.     Defendant Scott Kohn, through the above-named companies and others unknown to the Bureau (together, "Defendants"), offers consumers lump-sum payments in exchange for which the consumers authorize Defendants to periodically debit the accounts in which the consumers deposit their pensions or other future income streams.

2.     Defendants represent to consumers, among other things, that these lump-sum payments are not "loans," that there is no applicable interest rate, and that the cost of the lump-sum advance is less than that of potential alternative sources of funds, such as credit cards.

3.     In fact, Defendants' product is a loan and is more costly than alternative financial products to which Defendants draw comparisons. Defendants misrepresent material aspects of their product. Defendants thus engage in deceptive acts and practices as well as other violations of "Federal consumer financial law," 12 U.S.C. § 5565(a)(1).

4.     Numerous state and local regulators and agencies also have concluded that Defendants' product is a loan for purposes of applicable state laws. These agencies include the California Department of Business Oversight; the Los Angeles City

Attorney's Office; the Minnesota Attorney General; the Colorado Attorney General; the Massachusetts Attorney General; the North Carolina Attorney General; the Iowa Attorney General; the Virginia Attorney General; the Oregon Attorney General; the Oregon Department of Consumer and Business Services; the Illinois Attorney General; the Illinois Department of Financial and Professional Regulation; the Maryland Attorney General; the Maryland Commissioner of  Financial Regulation; the Pennsylvania Department of Banking and Securities; the New York State Department of Financial Services; and the State of Washington Department of Financial Institutions.

5.      Defendants' product lures in vulnerable consumers, including senior citizens, disabled military veterans, and their spouses, who are in need of immediate cash.

6.      The Bureau brings this suit to secure injunctive relief, other monetary and equitable relief, and civil money penalties.

## Jurisdiction and Venue

7.      This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

8.      Venue is proper because Defendants are located or reside or do business in this district. 12 U.S.C. § 5564(f).

## Parties

9.      The Bureau is an independent agency of the United States charged with regulating the offering and providing of consumer-financial products and services under "Federal consumer financial laws." 12 U.S.C. § 5491(a). The Bureau is authorized to initiate civil actions in federal district court, by its own attorneys, to address violations of "Federal consumer financial law." 12 U.S.C. § 5564(a)-(b).

10.      Future Income Payments, LLC, previously known as "Pension, Annuities and Settlements, LLC," was formed in April 2011 and is a limited-liability Delaware

company that has conducted business from 18300 Von Karman Avenue, Suite 410, Irvine, California 92612. Scott Kohn is or was the President, Secretary, and Treasurer of Future Income Payments. Future Income Payments transacts or has transacted business in this district and nationwide, extending consumer credit and servicing consumer loans. Future Income Payments is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(5), (6)(A), 15(A)(i).

11.     FIP, LLC, is a Nevada limited-liability company, formed in 2016, that has conducted business from 2505 Anthem Village Drive, #E-578, Henderson, Nevada 89052. FIP, LLC, has two managing members, one of which is Cash Flow Outsourcing Services, Inc., based in the Philippines. Scott Kohn is the President of Cash Flow Outsourcing Services, Inc. FIP, LLC, transacts business nationwide, extending consumer credit and servicing consumer loans. FIP, LLC, is therefore a "covered person" under the CFPA. 12 U.S.C. §§ 5481(5), (6)(A), 15(A)(i).

12.     Cash Flow Investment Partners LLC (www.lumpsum-settlement.com); Pension Advance LLC (www.pensionadvances.com and www.lumpsum-pensionloans.com); and BuySellAnnuity Inc. (buysellannuity.com), are or were limited-liability Delaware Companies that have operated out of 18300 Von Karman Avenue, Suite 410, Irvine, California 92612. They are or were marketing affiliates for Future Income Payments that are or were solely managed by Scott Kohn. They market or marketed the credit products that Future Income Payments provides and collect or collected the personal and financial information from consumers who express or expressed interest in the products.

13.     These marketing affiliates are "covered persons" under the CFPA because they offer or have offered loans to consumers. 12 U.S.C. §§ 5481(5), (6)(A), 15(A)(i). They are also covered persons because they are under common control with and therefore affiliates of Future Income Payments and provide or have provided a material service to

Future Income Payments with respect to its extensions of consumer credit. 12 U.S.C. §§ 5481(1), (6)(B), 26(A).

14.   The following Nevada limited-liability companies work or worked with Future Income Payments and are or were solely managed by Scott Kohn: Cash Flow Investment Partners East LLC; Cash Flow Investment Partners MidEast LLC; Lumpsum Pension Advance Atlantic LLC; Lumpsum Pension Advance Southeast LLC; Lumpsum Settlement West LLC; PAS California LLC; PAS Great Lakes LLC; PAS Northeast LLC; PAS Southwest LLC; Pension Advance Carolinas LLC; Pension Advance Midwest LLC; and Pension Loans South LLC. These companies have conducted business from 2505 Anthem Village Drive, #E-578, Henderson, Nevada 89052. They purport to acquire or purported to acquire income streams from consumers entitled to payments from pensions, annuities, legal settlements, or other similar sources. After subjecting consumers to an underwriting process, Future Income Payments provides lump sums to consumers in exchange for the consumers' promises to direct future payments, including fees, in equal installments for a set term to the aforementioned companies or to Future Income Payments.

15.   The companies named in paragraph 14 are "covered persons" under the CFPA because they service consumer loans, 12 U.S.C. §§ 5481(6)(A), 15(A)(i). They are also "covered persons" because they are under common control with and therefore affiliates of Future Income Payments and provide or have provided a material service to Future Income Payments with respect to its extensions of consumer credit. 12 U.S.C. §§ 5481(6)(B), 26(A).

16.   Scott Kohn is or was the President, Secretary, and Treasurer of Future Income Payments, and has, or had, managerial authority for that entity. In addition, Kohn is or was the sole manager of Cash Flow Investment Partners LLC; Pension Advance LLC; BuySellAnnuity Inc.; Cash Flow Investment Partners East LLC; Cash Flow Investment Partners MidEast LLC; Lumpsum Pension Advance Atlantic LLC; Lumpsum

1   Pension Advance Southeast LLC; Lumpsum Settlement West LLC; PAS California LLC;

2   PAS Great Lakes LLC; PAS Northeast LLC; PAS Southwest LLC; Pension Advance

3   Carolinas LLC; Pension Advance Midwest LLC; and, Pension Loans South LLC. Kohn

4   has managerial responsibility for all of the Defendant entities. Under the CFPA, Kohn is

5   therefore a "related person" to these entities. 12 U.S.C. § 5481(25)(C)(i). Because Kohn

6   is a "related person," he is deemed a "covered person" for purposes of the CFPA. 12

7   U.S.C. § 5481(25)(B).

8        17.    The true names and capacities of the Defendants sued herein as Does 1

9   through 100, inclusive, are unknown to the Bureau. The Bureau therefore sues these

10  Defendants by such fictitious names. When the true names and capacities of these

11  Defendants have been ascertained, the Bureau will seek leave to amend this Complaint to

12  insert the true names and capacities of the fictitiously-named Defendants. The Bureau

13  believes, and therefore alleges, that these Defendants participated in, and in some part are

14  responsible for, the illegal acts alleged herein. Each reference in this Complaint to

15  Defendants is also a reference to all Defendants sued as Does.

16       18.    Defendants Future Income Payments; FIP, LLC; Cash Flow Investment

17  Partners LLC; Pension Advance LLC; BuySellAnnuity Inc.; Cash Flow Investment

18  Partners East LLC; Cash Flow Investment Partners MidEast LLC; Lumpsum Pension

19  Advance Atlantic LLC; Lumpsum Pension Advance Southeast LLC; Lumpsum

20  Settlement West LLC; PAS California LLC; PAS Great Lakes LLC; PAS Northeast

21  LLC; PAS Southwest LLC; Pension Advance Carolinas LLC; Pension Advance Midwest

22  LLC; Pension Loans South LLC; and, Does 1-100 (collectively, FIP) operate or operated

23  as a common enterprise while engaging in the unlawful acts and practices alleged in the

24  Complaint. FIP conducts or has conducted the business practices described below as

25  interrelated companies that have or had a common manager and overlapping office

26  locations. Because these Defendants have operated as a common enterprise, each of them

27  is jointly and severally liable for the acts and practices alleged below. Individual

28

Defendant Kohn has or had managerial responsibility for the corporate Defendants that comprise the common enterprise.

### Factual Background

#### A.    Defendants' Scheme

19.    The corporate Defendants are affiliated entities, led by individual Defendant Scott Kohn, that purport to purchase, through lump-sum payments, portions of consumers' future pension or other income streams at a discount.

20.    FIP operates through a web of interconnected companies. The corporate Defendants operate interchangeably, often using each other's names and addresses.

21.    According to Defendant FIP, LLC's website, futureincomepayments.com, FIP is "America's largest pension cash flow originator with over $150 Million in completed transactions."

22.    Through advertisements, cold-calling, and email campaigns, FIP lures in vulnerable consumers in need of cash. FIP claims that the product it offers is useful for "[p]ay[ing]-off high-interest credit cards and debts[.]" Many military veterans, retirees, and their spouses have contracted with FIP.

23.    FIP operates or has operated websites, including futureincomepayments.com, buysellannuity.com, pensionpurchasing.com, lumpsum-pensionloans.com, and lumpsum-settlement.com, to market and sell its product. Once a consumer contacts FIP, FIP's representatives apply significant pressure to consumers to quickly sign a contract.

#### B.    FIP's Product, Fees, and Representations to Consumers

24.    Since at least 2011, under various corporate names, FIP has marketed its product to consumers as the purchase and sale of a portion of the consumer's future pension or other income stream at a "discount" in exchange for an immediate lump-sum cash payment.

25.     Consumers who contract with FIP are required to execute an agreement entitled "Purchase and Sale Agreement," or some variation thereof. These agreements purport to effect the sale of consumers' pensions or other future income streams to FIP.

26.     Under FIP's contracts, consumers receive lump sums, ranging from $100 to at least $60,000, and are subsequently obligated to repay a larger total amount through a series of monthly payments, which they make when they receive their disability, pension, or other payments. Consumers make these payments over a prescribed period, typically 48, 60, or 120 months.

27.     Many of the income streams that FIP contracts for are not legally assignable. *See, e.g.*, 29 U.S.C. § 1056(d); 38 U.S.C. § 5301.

28.     Consumers who contract with FIP are required to agree to make automatic recurring payments from their bank accounts to FIP as a condition of receiving the money FIP provides.

29.     In addition to its "Purchase and Sale Agreement," FIP requires consumers who contract with FIP to execute an "Authorization for Automatic Payment (Electronic Funds Transfer/EFT)" or equivalent document providing that they authorize FIP and their bank to initiate recurring debit entries as payment for the sale of an asset.

30.     FIP does, in fact, exercise its right under these agreements to debit the amount of payments due from consumers from consumers' bank accounts.

31.     In addition to the "discount" consumers are required to pay in exchange for the lump sum, FIP often subtracts fees, such as a $300 "one-time setup fee" from the lump sum, as well as a monthly "management fee" for the duration of the agreement.

32.     Some consumers are also required to take out life-insurance policies and name FIP or a third-party future income-stream buyer (investor) as the beneficiary, to protect FIP in the event the consumer dies.

33.     Consumers who fail to make a timely payment are charged a late fee of 1.5% of the delinquent payment. This amount accrues monthly, based on the total amount of

1   the delinquent payment, including any late payment fee from a previous month.

2   Consumers are also charged an additional $25-$35 for any form of payment returned to

3   FIP for non-sufficient funds, and some consumers may be charged for costs FIP incurs to

4   collect the delinquent amount.

5         34.    FIP operates throughout the United States, and has offered or provided its

6   product to thousands of vulnerable consumers across the nation.

7         35.    FIP repeatedly emphasizes to consumers online and in certain documents

8   that its product is "a purchase and not a loan." FIP's contracts with consumers contain

9   some variation of the title "Purchase and Sale Agreement" and, with slight variations,

10  expressly assert that the "agreement is not a loan or other financing transaction, and

11  neither Seller [of the future income stream] nor FIP intend this agreement to be regarded

12  as a loan or other financing instrument."

13        36.    Some of FIP's contracts also state that if "a court ever finds that the sale of

14  the Purchased Asset was ineffective or that this Agreement created a loan rather than an

15  absolute sale of the Purchased Asset, then this Agreement will serve as a security

16  agreement under the Uniform Commercial Code or similar law of the state in which

17  Seller resides."

18        37.    On Defendant FIP, LLC's website, buysellannuity.com, there is a page

19  dedicated to pensions. This Pension Payments page refers to FIP's team of "retirement

20  loan professionals," who can help consumers "[s]implify the end-to-end process" by

21  working with a "knowledgeable" team that specializes "in annuity buyout, individual

22  retirement loans, and pension payment advances."

23        38.    FIP also engages in underwriting and the collection of extensive

24  information, guarantees, and documents before providing lump-sum payments to

25  consumers. For example, FIP requires consumers to submit a variety of documents,

26  including a benefits letter from the institution providing the income stream, a photo

27  identification, personal or corporate tax returns if the consumer is self-employed, a W-9

28

1    form, and, if applicable, bank statements, proof of life insurance with death-benefit

2    amount, a notarized spousal-consent form, a notarized agreement from the consumer's

3    spouse that among other things requires the consumer's spouse to guarantee all of the

4    consumer's obligations to the "buyer" of the future income stream, and an employment-

5    verification form.

6        39.    FIP claims that there is no interest rate associated with its product. Rather,

7    FIP asserts, the difference between the lump sum consumers receive and the total amount

8    they are required to pay represents a "discount." But what FIP calls a discount is in

9    actuality a form of interest the consumer pays over the term of the agreement. FIP

10   transactions cost consumers amounts that are equivalent to rates of up to 183%, and

11   potentially more.

12       40.    FIP's representatives also have led consumers to believe they can repay the

13   lump-sum payment early and without penalty. In fact, many FIP contracts provide that

14   the lump-sum payment cannot be prepaid. In many instances when consumers have been

15   allowed to repay their loans early, they have been penalized.

16       41.    Certain versions of FIP's contracts include clauses that bind the consumers'

17   heirs, executors, administrators, successors, or assigns, require consumers to abide by the

18   contract even if the consumer files for bankruptcy, and provide that if a consumer

19   materially breaches the agreement all remaining and unpaid future periodic payments

20   shall be immediately due and payable.

21       42.    Under TILA, 15 U.S.C. § 1602(g), and Regulation Z, 12 C.F.R. §

22   1026.2(a)(17)(i)(2018), FIP is a creditor because it regularly extends consumer credit that

23   is subject to a finance charge or is payable by a written agreement in more than four

24   installments—and the obligation is initially payable to FIP.

25       43.    FIP does not provide consumers the closed-end-credit disclosures required

26   by TILA, 15 U.S.C. §§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. §§ 1026.1 *et seq.*, such

27   as disclosures of the "finance charge" and "annual percentage rate." FIP seeks to avoid

28

the requirements to provide such disclosures, which apply to closed-end-credit transactions, by labeling its transactions as "sales" rather than loans. In fact, however, FIP's transactions involve extensions of closed-end credit under TILA and Regulation Z.

44.    FIP offers and provides the income streams from consumers to third-party investors, usually as 60- or 120-month cash flow payments, providing interest rates between 6% and 12% for their investment.

45.    FIP presents investors with offers of cash-flow payments from specific consumers, providing on the offer sheet, among other information, the name of the consumer, the asset issuer, information about the cash flow, and the amount required to "purchase" that cash flow. It is from these "investments" that FIP raises the funds to provide contracting consumers with lump-sum payments. FIP solicits investors online and also receives referrals from financial advisors.

**C.    The Corporate Defendants' Common Enterprise**

46.    The collection of Defendant-companies operated by Scott Kohn does not operate at arm's length but rather functions as a common enterprise.

47.    The entities share physical addresses, website URLs, and webpages, and Kohn manages them all.

48.    As described above, each of the corporate Defendants plays a role in the common enterprise. Several of the Defendant-entities are marketing affiliates of Future Income Payments. *See* ¶ 12. These entities, as well as FIP, LLC, and Future Income Payments, provide or provided marketing services for the scheme as a whole. Other entities acquire or acquired income streams derived from various pensions, annuities, settlements, or like inflows, which are or were then serviced by Future Income Payments. *See* ¶ 14. Among a variety of administrative and other services that Future Income Payments provides or has provided to those entities that acquire or acquired income streams, it maintains and collects income-stream payments. This involves but is not

1  limited to sending statements and collecting payments from third parties, as well as

2  initiating collection activity against those who fail to remit payments.

3       49.    The corporate Defendants' actions and omissions as set forth herein include

4  the actions and omissions of each Defendant-entity acting jointly and severally.

5  <u>Count I</u>

6  **Deceptive Acts or Practices in Violation of the CFPA**

7  **Against All Defendants**

8       50.    The Bureau realleges and incorporates by reference paragraphs 1-49 of this

9  Complaint.

10       51.    An act or practice is deceptive if it involves a material misrepresentation or

11  omission that is likely to mislead consumers acting reasonably under the circumstances.

12       52.    In marketing the loans in question, FIP routinely represents that the product:

13          a.    is not a loan;

14          b.    does not have an interest rate associated with it; and

15          c.    is comparable to or cheaper than credit-card debt.

16       53.    In fact, FIP's product is a loan, and what FIP claims is a "discount" is a form

17  of interest associated with its product. In addition, FIP charges consumers the equivalent

18  of rates up to 183%, and potentially more, which is far in excess of a high-interest credit

19  card.

20       54.    These material representations are false and misleading. Denying that FIP's

21  product is a loan, that any interest rate applies, and that the cost of the loan is more than

22  the cost of credit-card debt are material misrepresentations because they mischaracterize

23  the nature of the product and render a reasonable consumer unable to compare the cost of

24  the product with other potential sources of credit.

25       55.    Therefore, Defendants have engaged in deceptive acts or practices in

26  violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

27

28

## Count II

### Violations of TILA

### Against All Corporate Defendants

56.     The Bureau realleges and incorporates by reference paragraphs 1-49 of this Complaint.

57.     TILA and Regulation Z require that certain disclosures be provided to a consumer before consummation of a closed-end credit transaction. 15 U.S.C. § 1638(a)-(b); 12 C.F.R. §§ 1026.17(a)-(b)(2015), 1026.18(2015).

58.     Among the required disclosures in a closed-end credit transaction are the finance charge and APR. 15 U.S.C. §§ 1602(v), 1638(a)(3)-(4); 12 C.F.R. § 1026.18(d)-(e).

59.     The finance charge is generally "the cost of consumer credit as a dollar amount" and "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a)(2011); *see also* 15 U.S.C. § 1605(a).

60.     Regulation Z requires that a creditor in a closed-end credit transaction disclose the finance charge, "using that term, with a brief description such as 'the dollar amount the credit will cost you.'" 12 C.F.R. § 1026.18(d).

61.     The APR is "a measure of the cost of credit, expressed as a yearly rate." 12 C.F.R. § 1026.22(a)(1)(2015); *see also* 15 U.S.C. § 1606(a).

62.     Regulation Z requires that a creditor in a closed-end credit transaction disclose the APR, "using that term, with a brief description such as 'the cost of your credit as a yearly rate.'" 12 C.F.R. § 1026.18(e).

63.     FIP provides consumers closed-end installment loans, which are subject to finance charges and for which an APR is required to be calculated and disclosed, but does not provide the disclosures required by TILA and Regulation Z. FIP therefore violated TILA and Regulation Z.

### Count III

### Violations of the CFPA

### Against All Corporate Defendants

64.     FIP's violations of TILA and Regulation Z alleged in Count II constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

### PRAYER FOR RELIEF

Wherefore, the Bureau requests that the Court:

1.     award injunctive relief as may be necessary to prevent consumer injury during the pendency of this action and to preserve the possibility of effective final relief;

2.     permanently enjoin Defendants from committing future violations of the CFPA or any provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

3.     grant additional injunctive relief as may be just and proper;

4.     award damages or other monetary relief against Defendants;

5.     order Defendants to pay redress to harmed consumers;

6.     order disgorgement of ill-gotten revenues from Defendants;

7.     impose civil money penalties against Defendants;

8.     order Defendants to pay the Bureau's costs and fees incurred in connection with prosecuting this action;

9.     appoint a receiver to assess the various claims of consumers and non-party investors; and

10.     award additional relief as the Court may determine to be just and proper.

Dated: September 13, 2018                    Respectfully submitted,

                                             Kristen A. Donoghue (DC Bar # 456707)
                                             *Enforcement Director*

Jeffrey Paul Ehrlich (FL Bar #51561)
*Deputy Enforcement Director*

   /s/Alanna B. Carbis
Alanna B. Carbis (CA Bar No. 264066)
    Email: alanna.carbis@cfpb.gov
    Telephone: (415) 645-6615
Leanne E. Hartmann (CA Bar No. 264787)
    Email: leanne.hartmann@cfpb.gov
    Telephone: (415) 844-9787
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Facsimile: (312) 610-8971

*Attorneys for the Bureau of Consumer*
*Financial Protection*

**COMPLAINT**